UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

DANUTA SZEWCZYK,                                    NOT FOR PUBLICATION

                      Plaintiff,        **MEMORANDUM & ORDER**
                                                   15-CV-918 (MKB) (RLM)

       v.

CITY OF NEW YORK, TAMARA SAAKIAN, and
AUDREY BROWN-BENNETT,

                     Defendants.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiff Danuta Szewczyk, proceeding *pro se*, commenced this action on February 20,

2015, (Compl., Docket Entry No. 1), against, *inter alia*, Defendants the City of New York (the

"City"),[1] Tamara Saakian and Audrey Brown-Bennett, and filed an Amended Complaint on

November 23, 2015.[2]  (Am. Compl., Docket Entry No. 20.)  In her Amended Complaint,

Plaintiff alleges that Defendants did not hire her because of her national origin, race, religion,

gender, age, marital status, and unemployment status, in violation of Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Age Discrimination in Employment Act

of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"), the Americans with Disabilities Act of 1990, 42

U.S.C. § 12101 *et seq.* ("ADA"), the New York State Human Rights Law ("NYSHRL"), N.Y.

---

[1]  Plaintiff's Complaint named the New York City Fire Department.  (Compl., Docket
Entry No. 1)  As discussed *infra*, the Court substituted the City of New York for the New York
City Fire Department.  (Minute Entry dated October 21, 2015.)

[2]  Audrey Brown-Bennett is now legally known as Audrey Thornton.  (Decl. of Audrey
Thornton ("Thornton Decl.") 1 n.1, Docket Entry No. 46.)

Exec. Law § 290 *et seq*., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8–101 *et seq*. (Am. Compl., Docket Entry No. 20.)[3] Defendants moved for summary judgment on June 9, 2017, pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Defs. Mot. for Summ. J. ("Defs. Mot."), Docket Entry No. 41; Defs. Mem. of Law in Supp. of Defs. Mot. ("Defs. Mem."), Docket Entry No. 47; Decl. of Scott Silverman ("Silverman Decl."), Docket Entry No. 43.) Plaintiff opposed the motion in an unsworn but notarized "declaration." (Pl. Opp'n to Summ. J. Mot. ("Pl. Opp'n"), Docket Entry No. 49.) On October 6, 2017, the Court referred Defendants' motion to Chief Magistrate Judge Roanne L. Mann for a report and recommendation. (Order dated October 6, 2017.)

By report and recommendation dated December 18, 2017, Judge Mann recommended that the Court grant the motion for summary judgment ("R&R"). (R&R 2, Docket Entry No. 53.) Plaintiff objected to the R&R,[4] (Pl. Obj. to R&R ("Pl. Obj."), Docket Entry No. 54), and Defendants replied to Plaintiff's objection, (Defs. Reply to Pl. Obj. to R&R ("Defs. Reply"), Docket Entry No. 56). For the reasons discussed below, the Court adopts the R&R in its entirety.

## I.   Background

The Court assumes the parties' familiarity with the facts and procedural history of the case as set forth in the Court's Memorandum and Order dated July 14, 2016 and the R&R. *See Szewczyk v. City of New York*, No. 15-CV-918, 2016 WL 3920216, at *1–2 (E.D.N.Y. July 14,

---

[3] Because the Amended Complaint is not consecutively paginated, the Court refers to the page number assigned by the Electronic Case Filing ("ECF") System.

[4] After filing objections to the R&R, by letter dated January 10, 2018, Plaintiff filed exhibits which Plaintiff claims should have been included with her objections to the R&R. (Pl. Letter dated Jan. 10, 2018, Docket Entry No. 55.)

2016).  The Court provides only a summary of the relevant facts below and a brief history of the proceedings.

### a.  Factual background

Plaintiff is a Roman Catholic woman of Polish descent, (Pl. Opp'n ¶ D), who was born in 1956, (EEOC Charge dated Dec. 2, 2014, annexed to Am. Compl.).  In May of 2011, the New York City Department of Citywide Administrative Services ("DCAS") published an amended notice of examination for an Assistant Civil Engineer position.  (Notice of Examination, annexed to Silverman Decl. as Ex. A, Docket Entry No. 43-1.)  At an unknown date thereafter, Plaintiff submitted application materials.  (Szewczyk Dep. 28:14–22, annexed to Silverman Decl. as Ex. B, Docket Entry No. 43-2.)  Based on her education and experience, Plaintiff scored 100 on the examination, the highest possible score.  (*Id.*)  Eligible candidates were ranked in order of their scores, placed on an "eligible list," given a "list number" and were to be interviewed in list order in the event of a vacancy.  (Notice of Examination 2.)

In May of 2014, the New York City Fire Department ("FDNY") announced a vacancy for an Assistant Civil Engineer "for its Technology Management Unit in the Bureau of Fire Prevention, specifically for the Rooftop Access Unit . . . ."  (Decl. of Thomas Pigott ("Pigott Decl.") ¶ 4, Docket Entry No. 44; Decl. of Tamara Saakian ("Saakian Decl.") ¶ 4, Docket Entry No. 45; Decl. of Audrey Thornton ("Thornton Decl.") ¶ 4, Docket Entry No. 46.)  The job duties included performing "on-site inspections of low-rise buildings and roofs to ensure safe and proper rooftop access for emergency responders."  (Pigott Decl. ¶ 9; Saakian Decl. ¶ 9.)

Plaintiff applied for the position and was invited to interview.  (Szewczyk Employment Application and Resume, annexed to Silverman Decl. as Ex. C, Docket Entry No. 43-3; Invitation to Interview, annexed to Silverman Decl. as Ex. D, Docket Entry No. 43-4.)  On May

20, 2014, Tamara Saakian, the Director of Engineering and Technology Management, and Shaji Joseph, Deputy Director of Engineering, interviewed Plaintiff, (Saakian Decl. ¶ 5; Thornton Decl. ¶ 5), one of twelve candidates who interviewed for the position, (Assistant Civil Engineer Sign-In Sheet, annexed to Silverman Decl. as Ex. E, Docket Entry No. 43-5; Saakian Decl. ¶ 10). Two Human Resources employees, Audrey Thornton and Michelle Vargas, observed Plaintiff's interview. (Saakian Decl. ¶ 6; Thornton Decl. ¶ 6.)

Plaintiff testified at her deposition that during her interview, while "looking [at Thornton]" but addressing Plaintiff, Saakian said, "'you're from Poland,' [s]he was like why did you brought [sic] this woman to me now." (Szewczyk Dep. 34:5–16.) According to Plaintiff, Saakian "used physical force" on her during the interview and tried to poke Plaintiff's "blue eye out with her sharp fingers nails." (Pl. Opp'n ¶ B.) In addition, Plaintiff alleges that Saakian twice asked her "how [she] would . . . feel working with younger supervisors." (Am. Compl. 4; *see also* Pl. Opp'n ¶ D.)

After the first round of interviews, Joseph and Saakian recommended two candidates, Gennadiy Lak and Keivan Notghi, for a second and final interview with Thomas Pigott, Chief of the Technology Management Division. (Saakian Decl. ¶¶ 7, 13; Pigott Decl. ¶¶ 6, 7.) At the time, Lak was employed with the New York City Department of Housing Preservation and Development ("HPD") as a Level 1 Construction Project Manager, where he had worked since May of 2005. (Pigott Decl. ¶ 8; Saakian Decl. ¶ 16; Resume of Gennadiy Lak ("Lak Resume"), annexed to Silverman Decl. as Ex. F, Docket Entry No. 43-6.) At HPD, Lak was responsible for "[p]repar[ing] daily inspection reports" and "[p]rovid[ing] Housing inspection services that include: [p]lumbing, electrical, roofing, flooring, GC plaster, structural." (Lak Resume 1.) Pigott interviewed both Lak and Notghi, (Pigott Decl. ¶ 7, 11), and Defendants claim they

selected Lak for the position because of his "directly applicable work experience," (*id.* ¶ 11).

Plaintiff argues that her Polish national origin suggested to Defendants that she may be Roman Catholic, (Pl. Opp'n ¶ D), and because Saakian is Russian, as evidenced by her accent, (Szewczyk Dep. 55:5–22), Saakian discriminated against Plaintiff because of her religion, (Pl. Opp'n ¶ G). Plaintiff argues testified that Saakian hired Lak because he is of Russian descent like Saakian, (Szewczyk Dep. 46:4–14, 55:1–12), and because he is younger than her, (Pl. Opp'n ¶ F). To support her claim that Defendants' improperly prefer to hire individuals from the former Soviet Union, Plaintiff contends that non-party City employee Lyudmila Kulik received a "double" promotion. (Pl. Opp'n ¶ C.) Plaintiff argues that the City promoted Kulik to Administrative Project Manager from Assistant Civil Engineer, even though the step above Assistant Civil Engineer in the promotional ladder is Civil Engineer. (*Id.* ¶ C.) Plaintiff also contends that on or about June 24, 2014, she contacted Thornton by telephone, who falsely told her that the FDNY had not yet filled the vacancy and that she would be contacted for a second interview. (*Id.*)

### b. Procedural background

Plaintiff commenced this action on February 20, 2015. (Compl.) At a pre-motion conference on October 21, 2015, the Court dismissed, *inter alia*, Plaintiff's Title VII and ADEA claims against Saakian and Brown-Bennett. (Minute Entry dated October 21, 2015.) The Court also substituted the City of New York for the FDNY, and granted Plaintiff leave to file an amended complaint. (*Id.*)

Plaintiff filed the Amended Complaint on November 23, 2015, (Am. Compl.), and Defendants moved to dismiss the Amended Complaint on February 17, 2016, (Defs. Mot. to Dismiss, Docket Entry No. 22).

On July 14, 2016, the Court granted the motion in part and denied it in part, dismissing Plaintiff's Title VII, NYSHRL, and NYCHRL claims for race and gender discrimination, her ADEA and NYSHRL claims for age discrimination, and her disability discrimination claims under the ADA. *See Szewczyk*, 2016 WL 3920216, at *14. The Court denied Defendants' motion to dismiss Plaintiff's Title VII and NYSHRL claims for religious discrimination and national origin discrimination, and her NYCHRL claims for national origin, religious and age discrimination. *Id.*

After the parties engaged in discovery, Defendants moved for summary judgment. (Defs. Mot.; Defs. Mem.) The Court referred the motion to Judge Mann, (Order dated October 6, 2017), and Judge Mann recommended that the Court grant Defendants' motion for summary judgment, (R&R 2).

### i. Judge Mann's recommendations

#### 1. Title VII and NYSHRL religious discrimination claims

Judge Mann determined that Plaintiff failed to make out a prima facie case of religious discrimination under Title VII and NYSHRL because she failed to establish that the decision not to hire her occurred under circumstances giving rise to an inference of religious discrimination. (*Id.* at 11.) Judge Mann found that "[t]he record contains no evidence from which a reasonable factfinder could infer that [D]efendants' decision not to hire [P]laintiff was based on religious discrimination" because Plaintiff offered no evidence that Defendants were even aware that she identified as Roman Catholic. (*Id.*) Judge Mann also found that even if Defendants inferred that Plaintiff was Roman Catholic based on her telling Saakian that she is Polish, "such knowledge is not itself indicative of discrimination." (*Id.*) In addition, Judge Mann concluded that Plaintiff's Title VII and NYSHR religious discrimination claims fail because Plaintiff has not shown that

Defendants treated her less favorably than a similarly situated applicant outside of her protected group because she offers no evidence as to Lak's religion. (*Id.*) Moreover, Judge Mann noted that "Plaintiff does not know if Saakian herself is a Roman Catholic but assumes that she is not" because as Plaintiff testified, "'[t]here is no Roman Catholic in Russia." (*Id.* at 12 (citing (Szewczyk Dep. 55).) Lastly, as related to the allegation that Saakian attempted to poke Plaintiff in the eye, Judge Mann found that, even if true, the "aggressive gesture towards [Plaintiff] during the interview . . . lacks any apparent connection to [P]laintiff's religion." (*Id.*)

### 2. Title VII and NYSHRL national origin discrimination claims

Judge Mann similarly determined that Plaintiff failed to make out a prima facie case of national origin discrimination under Title VII and NYSHRL because she failed to establish that the decision not to hire her occurred under circumstances giving rise to an inference of national origin discrimination. (*Id.* at 13–16.) First, Judge Mann found that Plaintiff's reliance on the alleged remark by Saakian, observing that Plaintiff is from Poland, is not itself probative of discrimination, (*id.* at 13), and Plaintiff has not otherwise shown that Saakian expressed negative or stereotyped views regarding people from Poland, (*id.* at 14). Second, Judge Mann concluded that Plaintiff's belief that Saakian, Lak and Kulik, another FDNY employee, are all from Russia, appears to be based on conjecture, and, even if true, does not give rise to an inference of discrimination, without evidence about other Polish applicants. (*Id.*) Third, Judge Mann found that Plaintiff "failed to show that she was similarly situated in all material respects to Mr. Lak in terms of their qualifications for the position" because Plaintiff, unlike Lak, "did not have the necessary experience conducting on-site roof and building inspections, and Lak had prior experience working for a City agency." (*Id.* at 15.) Fourth, Judge Mann rejected Plaintiff's reference to Defendants' promotion of Kulik as raising an inference of discriminatory animus

because Plaintiff has not claimed that she applied for Kulik's position and provided no "evidence as to the circumstances surrounding Kulik's promotion, including the identity of the relevant decisionmaker." (*Id.* at 16.)

Moreover, Judge Mann found that even assuming Plaintiff could make out a prima facie case of national origin discrimination, Defendants have established a legitimate non-discriminatory reason for hiring Lak, because unlike Plaintiff, Lak "had prior experience working for a City agency and conducting roof and building inspections." (*Id.* at 16.) Judge Mann found that Plaintiff did not raise "a genuine issue of fact as to whether [D]efendant's non-discriminatory explanation was pretextual." (*Id.*) Judge Mann found that Plaintiff presented no evidence that her "Master's degree made her candidacy 'so superior' to the qualifications of Mr. Lak so as to make the selection of Mr. Lak unreasonable." (*Id.* at 17.) In addition, Judge Mann found that, "although Plaintiff ascribes a discriminatory motive to Saakian," Saakian was not the only member of the selection committee, and both members of the committee recommended Lak and Notghi, instead of Plaintiff, for a second interview. (*Id.* at 18.)

### 3. NYCHRL religious, national origin and age discrimination claims

Judge Mann also determined that Plaintiff failed to establish NYCHRL religious and national origin discrimination claims as Plaintiff failed to present evidence "from which a reasonable jury could conclude" that religious and national origin discrimination "played any role in [D]efendants' decision not to hire Plaintiff." (*Id.* at 19.)

As to Plaintiff's NYCHRL age discrimination claim, Judge Mann assumed that Plaintiff had established a prima facie case of age discrimination, but nevertheless concluded that Plaintiff has not raised an issue of fact as to whether Defendants' explanation for their decision not to hire Plaintiff is pretextual, or whether they acted at least in part for discriminatory reasons. (*Id.* at

20.)  Judge Mann found that "[D]efendants' purported remarks regarding working with younger supervisors do not establish pretext," and because Saakian and Lak are over fifty and therefore members of the same protected category as Plaintiff, the facts do not support an inference of age discrimination.  (*Id.* at 20–21.)

## II.  Discussion

### a.  Standards of review

#### i.  Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015).  The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record.  *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015).  The clear error standard also applies when a party makes only conclusory or general objections.  *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding "general objection[s] [to be] insufficient to obtain *de novo* review by [a] district court" (citations omitted)); *see also* Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file *specific* written objections to the [magistrate judge's] proposed findings and recommendations." (emphasis added)); *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b) . . . .").

## ii. Summary judgment

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018); *see also Cortes v. MTA NYC Transit*, 802 F.3d 226, 230 (2d Cir. 2015). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b. Plaintiff's objections to the R&R

Plaintiff raises several objections to the R&R.[5] Plaintiff argues she has made out a prima

---

[5] Pursuant to Local Civil Rule 56.2, Defendants served Plaintiff with separate notice of their motion for summary judgment, (Defs. Notice Pursuant to Local R. 56.2 ("56.2 Notice"), Docket Entry No. 48), but Plaintiff failed to submit a response to Defendants' Statement of Material Facts Pursuant to Local R. 56.1. However, a "district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *McLean v. Metropolitan Jewish Geriatric Center*, No. 11-CV-3065, 2013 WL 5744467, at *1 (E.D.N.Y. Oct. 23, 2013) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (internal quotation marks omitted)). In light of Plaintiff's *pro se* status, the Court will "deem admitted only those facts that are supported by the record and not controverted by other admissible

facie case of religious and national origin discrimination because the evidence establishes an

inference of discriminatory intent.[6]  (*See generally* Pl. Obj.)  Plaintiff argues that the following

raise an inference of discrimination: (1) the aggressive gesture by Saakian, (Pl. Obj. ¶ C); (2)

Saakian's comment asking whether she is Polish, (*id.* ¶ F); (3) both candidates who moved to the

second round of interviews were from the former Soviet Union, (*id.* ¶¶ G, H, O); and (4) no

Roman Catholic people of Polish descent work as Assistant Civil Engineers for the City, (*id.* ¶¶

J, V).  Further, Plaintiff argues that the decision to hire Lak was unreasonable, and therefore

pretextual, because her credentials are superior to Lak's, (*id.* ¶¶ I, W, X, Y, Z, AA), and because

his roof experience is unnecessary to the job Lak performs, (*id.* ¶¶ I, N).  Lastly, Plaintiff asserts

that Saakian's question asking Plaintiff "how would [she] feel working with younger

supervisors" establishes pretext.[7]  (Am. Compl. 4; Pl. Obj ¶ D.)  Construing Plaintiff's objections

---

evidence." *Hill v. Laird*, 06-CV-126, 2016 WL 3248332, at *4 (E.D.N.Y. 2016) (citing *McLean*, 2013 WL 5744467, at *1 (internal quotation marks omitted)).

[6] Defendants assume for the purposes of the motion that Plaintiff can establish the first three elements of her prima facie case.  (Defs. Mem. of Law in Supp. of Defs. Mot. ("Defs. Mem.") 4, Docket Entry No. 47.)

[7] Plaintiff's objections also contain allegations concerning Title VII and NYSHRL gender discrimination claims she previously asserted.  (Pl. Obj. to R&R ("Pl. Obj.") ¶¶ B, E, T, Docket Entry No. 54.)  Because the Court already dismissed these claims on July 14, 2016, *see See Szewczyk v. City of New York*, No. 15-CV-918, 2016 WL 3920216, at *1–2 (E.D.N.Y. July 14, 2016), it declines to consider Plaintiff's objections as to these claims.  *See Sanders v. Sullivan*, 900 F.2d 601, 605 (2d Cir. 1990) ("Under the law of the case doctrine, this court adheres to its own decision at an earlier stage of the litigation unless there are cogent or compelling reasons not to, such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." (internal citations and quotation marks omitted)).
Plaintiff also argues that although she complied with her discovery obligations, Defendants did not, and asserts that there are outstanding discovery disputes.  (Pl. Obj. ¶¶ U, CC.)  Judge Mann ordered discovery closed by January 31, 2017.  (Minute Entry dated Dec. 1, 2016.)  Plaintiff did not raise these discovery disputes prior to the close of discovery and the time to do so has since passed.  The Court declines to entertain at this stage of the litigation Plaintiff's

to "raise the strongest arguments they suggest," *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (citation omitted), the Court understands Plaintiff to object to Judge Mann's recommendations that the Court grant Defendants' motion as to her Title VII and NYSHRL religious and national origin claims, and her NYCHRL religious, national origin and age discrimination claims.

### i. Title VII and NYSHRL claims

Title VII and NYSHRL discrimination claims are analyzed under the three-stage, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Littlejohn v. City of New York*, 795 F.3d 297, 307–08 (2d Cir. 2015); *see also Hyek v. Field Support Servs., Inc.*, 461 F. App'x 59, 60 (2d Cir. 2012) ("Claims brought under the NYSHRL 'are analyzed identically' and 'the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under . . . Title VII.'" (alteration in original) (quoting *Smith v. Xerox Corp.*, 196 F.3d 358, 363 n.1 (2d Cir. 1999)). To establish an employment discrimination claim, "a plaintiff must first establish a *prima facie* case

---

allegations that Defendants failed to provide her with requested discovery. *See Campbell v. New York City Transit Authority*, 93 F. Supp. 3d 148, 155 n.1 (E.D.N.Y. 2015) (declining to consider discovery disputes not previously raised) *aff'd*, 662 F. App'x 57 (2d Cir. 2016).

In addition, in several paragraphs of her objections to the R&R, Plaintiff discusses the persecution of people of Polish descent and Roman Catholics in the Soviet Union, the status of Jewish people as political elites in the Soviet Union, demographic statistics of the Soviet Union, and immigration trends of people from the former Soviet Union to the United States. (Pl. Obj ¶¶ K, L, M, P, R, S.) Plaintiff also makes conclusory assertions regarding Saakian and Lak, including that they are both "emigrant[s] from former Soviet Union Federations [sic]," (Pl. Obj. ¶ O), that Lak "associates himself with Bnai Zion Scientific Division," to which only Jewish people belong, (Pl. Obj. ¶ K), and that "Saakian['s] behavior expressed kinds of the 'Manjurian syndrome' [sic] implanted into her mind by her parents or Soviet schools which triggers anger when she meet a Pole," (Pl. Obj. ¶ Q, BB). Finally, Plaintiff contends that Saakian "will not hire woman [sic] from Poland, who she does not know" because of her "[S]oviet background," (Pl. Obj. ¶ G). None of these conclusory allegations and conjectures provide support for Plaintiff's religious, national origin, or age discrimination claims.

of discrimination by showing that: '(1) she is a member of a protected class; (2) he is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)). A plaintiff's burden at this stage is "minimal." *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)). If the plaintiff meets her burden at this stage, a "temporary presumption" of discrimination arises, and the burden shifts to the defendant-employer to articulate a legitimate, nondiscriminatory reason for the challenged conduct. *Vega*, 801 F.3d at 84 (2d Cir. 2015) (quoting *Littlejohn*, 795 F.3d at 307, 311). If the defendant-employer articulates such a reason, the burden shifts back to the plaintiff-employee to show that the defendant-employer's reason was pretext. *Id.* at 83; *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (citing *United States v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011)).

### 1. Title VII and NYSHRL religious discrimination claims

Plaintiff argues that she has made out a prima facie religious discrimination case because she has presented sufficient evidence to establish that the decision not to hire her occurred under circumstances giving rise to an inference of religious discrimination. (Pl. Obj. ¶¶ B, C.) First, Plaintiff claims that Saakian's aggressive gesture is indicative of Saakian's religious discriminatory animus. (*Id.*) Second, Plaintiff asserts that Roman Catholic individuals of Polish descent are underrepresented as Assistant Civil Engineers for the City. (*Id.* ¶¶ J, V.) In support of her second assertion, Plaintiff argues that (a) the City "did not prove" that it hired any Roman-Catholic Polish employees for the position of Assistant Civil Engineer, (b) has not done so for the last fifteen years, (c) that among a pool of 296 Assistant Civil Engineers in 2009, at least

seventy were from the former Soviet Union, and none were Roman Catholics from Poland, and (d) that other candidates of Polish descent received the same score as Plaintiff but similarly have not been hired. (*Id.*) Plaintiff appears to rely on a 2009 payroll spreadsheet for City employees in the title of "Assistant Civil Engineer."[8] The spreadsheet lists, *inter alia*, the names of Assistant Civil Engineers in various city agencies, along with their start date and salary. (Payroll spreadsheet.)

Inference of discrimination "is a 'flexible [standard] that can be satisfied differently in differing factual scenarios.'" *Howard v. MTA Metro–N. Commuter R.R.*, 866 F. Supp. 2d 196, 204 (S.D.N.Y. 2011) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996)). "No one particular type of proof is required to show that Plaintiff's termination occurred under circumstances giving rise to an inference of discrimination." *Moore v. Kingsbrook Jewish Med. Ctr.,* No. 11–CV–3625, 2013 WL 3968748, at *6 (E.D.N.Y. July 30, 2013) (citations omitted). An inference of discrimination can be drawn from circumstances such as "the employer's criticism of the plaintiff's performance in . . . degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's [adverse employment action]," *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir.

---

[8] Plaintiff did not include this argument or the payroll spreadsheet in her opposition to the motion for summary judgment. Under Rule 72(b) of the Federal Rules of Civil Procedure, district courts have discretion to, among other things, "receive further evidence" in considering objections to a magistrate judge's recommended ruling. Fed. R. Civ. P. 72(b). In light of Plaintiff's *pro se* status, the Court exercises its discretion to consider the new evidence submitted with her objections. *See Augustin v. Capital One*, No. 14-CV-179, 2015 WL 5664510, at *2 n.2 (E.D.N.Y. Sept. 24, 2015) (considering additional evidence submitted with *pro se* plaintiff's objections to the magistrate judge's recommended ruling). Although attached to the Court's copy of Plaintiff's opposition papers to Defendants' motion, the payroll spreadsheet is not electronically filed on the docket. The parties are directed to file a copy of the spreadsheet electronically and under seal within five days of this Memorandum and Order.

2001) (citation omitted), or by "showing that an employer treated [an employee] less favorably than a similarly situated employee outside his protected group," *Abdul–Hakeem v. Parkinson*, 523 F. App'x 19, 20 (2d Cir. 2013) (quoting *Ruiz*, 609 F.3d at 493). "In determining whether a genuine issue of material fact exists for trial," a court is obliged to "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." *Woodman v. WWOR–TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) (internal quotation marks omitted) (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999)).

Here, Plaintiff has not presented evidence to show that the decision not to hire her occurred under circumstances giving rise to an inference of religious discrimination, and therefore fails to establish a prima facie case under Title VII and NYSHRL. First, Plaintiff has provided no evidence that the aggressive gesture Saakian made was motivated by Plaintiff's religion. *See Abdu–Brisson*, 239 F.3d at 468. Nor has Plaintiff presented evidence that Saakian made any statements concerning her religion. In fact, Plaintiff has put forth no evidence suggesting that Saakian was even aware of her religion, and testified at her deposition that she did not tell her interviewers her religious affiliation. (Szewczyk Dep. 83:6–8.) Plaintiff only speculates that because Saakian asked her if she was Polish, Saakian may have surmised that Plaintiff was Roman Catholic. (Pl. Opp'n ¶ D.) Plaintiff's argument also fails because she offers no evidence as to the religion of Lak, or otherwise shown that Defendants were aware of his religion at the time they decided to hire him over Plaintiff. Furthermore, as Judge Mann correctly noted, Plaintiff's assertion that Saakian discriminated against her based on her religion is based solely on Plaintiff's own ethnic stereotyping. (R&R 12.) Plaintiff simply assumes Saakian is not Roman Catholic because of her Russian accent. (Szewczyk Dep. 55:18–24.)

Thus, Plaintiff has presented no evidence that Saakian's decision not to hire Plaintiff was in any way connected to Plaintiff's religion. *See Abdul–Hakeem*, 523 F. App'x at 20.

Second, the evidence cited in support of Plaintiff's assertion that people of Roman Catholic Polish descent are underrepresented as City Assistant Civil Engineers does not undermine Judge Mann's sound determination that Plaintiff has not established a prima facie case of religious discrimination without information as to the religious composition of the qualified labor pool.[9] *See Lomotey v. Connecticut-Dep't of Transp.*, 355 F. App'x 478, 481 (2d Cir. 2009) (finding that in a Title VII failure to promote case "evidence that only Caucasians were selected for these placements amounts to nothing more than raw numbers which, without further information on key considerations such as the racial composition of the qualified labor pool, cannot support an inference of discrimination").

Because the aggressive gesture and the evidence submitted with Plaintiff's objections would not permit a rational juror to find that the decision not to hire her gives rise to an inference of discrimination, Plaintiff has failed to establish a prima facie case of Title VII and NYSHRL religious discrimination.

### 2.    Title VII and NYSHRL national origin discrimination claims

Plaintiff argues that Saakian's alleged remark that Plaintiff is from Poland is in and of itself probative of discrimination and therefore establishes a prima facie case of national origin

---

[9]  The Court liberally construes Plaintiff's argument regarding the underrepresentation of Roman Catholic people of Polish descent as applying to both Plaintiff's religious and national origin discrimination claims.  For the reasons discussed *supra*, Plaintiff's evidence fails to give rise to an inference of religious or national origin discrimination.  In addition, Plaintiff's argument that Notghi, the other candidate besides Lak who was offered a second interview, is also from the former Soviet Union, (Pl. Obj. ¶ G), fails to raise an inference of religious or national origin discrimination because there is no information in the record as to his qualifications.

discrimination. (Pl. Obj. ¶ F.) Plaintiff also argues that Defendants' reason not to hire her is pretext, because one of Defendants' cited reasons for hiring Lak — roof inspection experience, is not required for the job she alleges Lak was hired to fill, (Pl. Obj. ¶¶ I, N), and because the decision to hire him was unreasonable in light of her superior qualifications, (Pl. Obj. ¶¶ I, W, X, Y, Z, AA).[10] For the reasons discussed below, the Court finds Plaintiff's arguments unpersuasive.

### A. Saakian's alleged remark is not probative of discriminatory intent

In support of Plaintiff's argument that Saakian's inquiry into her national origin established a prima facie case of national origin discrimination, Plaintiff cites a "Guide to Structured Interviewing" issued by DCAS, which states that interviewers should avoid asking questions regarding, among other things, age and national origin. (A Guide to Structured Interviewing, annexed to Pl. Obj.)

Contrary to Plaintiff's objection, Saakian's question as to whether Plaintiff is from Poland is not itself probative of discrimination even though spoken by a decisionmaker, while engaging in the decision-making process, because no reasonable juror could view the remark, without more, as discriminatory. *See Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010) (outlining four factors district courts in this circuit routinely consider in evaluating the probative value of such remarks, including (1) the identity and position of the individual making the remark, (2) the timing of the remark in relation to the employment decision, (3) the content

---

[10] The Court liberally construes Plaintiff's arguments that the roof inspection rationale is pretextual and that the decision to hire Lak is unreasonable as applying to both her religious and national origin discrimination claims. For the reasons discussed *infra*, Plaintiff has failed to raise a genuine issue of fact as to whether Defendants' explanation was pretext for religious or national origin discrimination.

of the remark, and (4) the context in which it was made); *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 116 (2d Cir. 2007), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) ("The relevance of discrimination-related remarks does not depend on their offensiveness, but rather on their tendency to show that the decisionmaker was motivated by assumptions or attitudes relating to the protected class.").  As Judge Mann noted, this remark is too vague to be probative of discrimination, especially where Plaintiff has not alleged that Saakian expressed negative or stereotyped views of people of Polish descent.  (R&R 14 (citing *Sellick v. Agency-Castle Point*, No. 09-CV-6616, 2010 WL 2813431, at *8 (S.D.N.Y. July 16, 2010)).)  Plaintiff's speculation is insufficient to raise an inference of discriminatory intent. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999) (finding that courts must "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture").

### B.   Plaintiff has failed to establish pretext

Even assuming that Saakian's question as to whether Plaintiff is Polish is probative of discrimination, because Plaintiff cannot show that Defendants' decision to hire Lak was unreasonable and therefore pretextual, her national origin claim nevertheless fails.  Plaintiff argues that the decision to hire Lak was unreasonable because roof inspection experience is not required and because of her superior credentials.[11]  The Court finds Plaintiff's arguments unpersuasive.

---

[11]   Judge Mann accepted Defendants' stated rationales of roof inspection experience and prior experience working for a City Agency as legitimate and non-pretextual.  (R&R 17–18, Docket Entry No. 53.)  Plaintiff's objections only challenge the finding as to the roof inspection rationale.  (Pl. Obj. ¶¶ I, N.)  Therefore, the Court does not address the prior City Agency experience rationale.

**(1)   Roof inspection experience**

Plaintiff disputes that Lak was hired for an Assistant Civil Engineer position, and claims he was in fact hired as a Plan Examiner.  (Pl. Obj. ¶¶ I, N.)  Plaintiff asserts that she has shown pretext because roof experience is not required for the role of Plan Examiner, and cites a job description for this role, which lists the job duties and responsibilities.  Plaintiff also asserts that Defendants' failure to produce the Job Vacancy Notice for the Assistant Civil Engineer position supports her claim that roof inspection experience is not required for this position because the notice would have listed the job duties and roof inspection experience would not have been included.  (Pl. Obj. ¶ I; Plan Examiner Job Description, annexed to Pl. Obj.)  In addition, Plaintiff relays an alleged statement of Marina Lak, sister-in-law to Lak, who "told [her] that Genadiy Lak like very much  [sic] [his] new job in Fire Department because he [sits] in w[a]rm office, do not do anymore inspections, he reads maps and documentations . . . ."  (Pl. Obj. ¶ I.)

Plaintiff offers no support for her assertion that Defendants hired Lak for a Plan Examiner position as opposed to the Assistant Civil Engineer position, and Defendant's alleged failure to produce the Job Vacancy Notice does not amount to such support.  *Vega*, 801 F.3d at 83 (noting that at the pretext stage the plaintiff has the burden to show that the reason was in fact pretextual).  Furthermore, the statement of Marina Lak is inadmissible hearsay.  *See Selvam v. Experian Info. Sols., Inc.*, 651 F. App'x 29, 31–32 (2d Cir. 2016) ("We have said that the party opposing summary judgment 'cannot rely on inadmissible hearsay in opposing a motion for summary judgment absent a showing that admissible evidence will be available at trial.'" (alteration omitted) (quoting *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985)).  However, even if the Court were to accept the alleged statement by Marina Lak as true, it does not demonstrate that having roof inspection experience

was not relevant to the decision to hire Lak. *Newsom-Lang v. Warren Int'l, Inc.*, 249 F. Supp. 2d 292, 299 (S.D.N.Y.) (rejecting pretext argument where Plaintiff failed to "present any evidence to contradict Defendant's assertion of the relevance of management and leadership qualities for this supervisory position") *aff'd*, 80 F. App'x 124 (2d Cir. 2003). Even if Lak does not utilize those skills, that fact does not demonstrate that the skills are not relevant. *See Milano v. Astrue*, No. 05-CV-6527, 2008 WL 4410131, at *35 (S.D.N.Y. Sept. 26, 2008), *aff'd*, 382 F. App'x 4 (2d Cir. 2010), and *aff'd*, 382 F. App'x 4 (2d Cir. 2010) ("Unless there is a showing of bad faith, however, it is not necessary for an employer to demonstrate the reasonableness of its employment criteria, nor is it for the Court to evaluate the wisdom of the criteria used in personnel decisions." (first citing *Thornley v. Penton Pub., Inc.*, 104 F.3d 26, 29 (2d Cir.1997) then citing *O'Leary v. NY State Unified Court Sys.*, No. 05-CV-6722, 2007 WL 2244483, at *7 (S.D.N.Y. Aug. 6, 2007))).

### (2) Plaintiff's credentials

Plaintiff argues that the decision to hire Lak was unreasonable in light of a comparison of their credentials as detailed in their resumes. For example, Plaintiff asserts that: (1) Lak's resume lacked information that hers did not, including whether he knew any "computer languages," (Pl. Obj. ¶ Z), his focus of study, dates of attendance and credits earned at various educational institutions, (Pl. Obj. ¶ W); (2) Lak did not earn a Master's Degree in Civil Engineering from an accredited United States institution, but Plaintiff did, (Pl. Obj. ¶ X); (3) Lak's purported salary request for the position, was more than the salary requested by Plaintiff,[12]

---

[12] Plaintiff asserts that the handwritten notes on the respective resumes indicate that Lak requested an annual salary of fifty-eight thousand dollars, while she requested an annual salary of only forty-seven thousand dollars. (Pl. Obj. ¶ Y.)

(Pl. Obj. ¶ Y); and (4) most of Lak's experience is as a "handyman," whereas Plaintiff has a BS/MS degree in Civil Engineering with a specialty in "Design of Building and Engineering Constructions," which specialty "is superior to all other specialties in civil engineering field and [the] hardest to obtain," (Pl. Obj. ¶ I).

As Judge Mann noted, Plaintiff has failed to establish that her qualifications were "so superior" to those of Lak such that his selection would be unreasonable. (R&R 17.) As Judge Mann concluded, courts should not second guess employers' business judgments in selecting between qualified candidates. (*Id.* (quoting *Stone v. Bd. of Educ. of Saranac Ctr. Sch. Dist.*, 153 F. App'x 44, 46 (2d Cir. 2005).)

Because the question as to whether Plaintiff is from Poland would not permit a rational juror to find that the decision not to hire her gives rise to an inference of discrimination, Plaintiff has failed to establish a prima facie case of Title VII and NYSHRL national origin discrimination. Moreover, even assuming she can establish a prima facie case of national origin discrimination, Plaintiff has not shown that Defendants' proffered reason for hiring Lak was pretext.

### 3. NYCHRL religious, national origin and age discrimination claims

Plaintiff objects to Judge Mann's finding that Saakian's purported remarks about working with younger supervisors do not establish pretext in support of her age discrimination claim. (Pl. Obj ¶ D.)

Although NYCHRL discrimination claims must be analyzed separately from federal and state discrimination claims, such claims are evaluated using a "similar framework." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75 (2d Cir. 2015). "[T]he plaintiff must establish a prima facie case, and the defendant then has the opportunity to offer legitimate reasons for its

actions." *Id.* at 75–76 (citing *Bennett v. Health Mgmt. Sys., Inc.*, 936 N.Y.S.2d 112, 124 (App.

Div. 2011)). If the defendant meets that burden, then "summary judgment is appropriate if 'the

record establishes as a matter of law' that discrimination *or* retaliation 'play[ed] no role' in the

defendant's actions." *Id.* at 76 (first quoting *Mihalik*, 715 F.3d at 110 n.8; and then

citing *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 38, 40 n.27 (App. Div. 2009)).

However, even under this more liberal standard, a plaintiff must "show that he has been treated

less well at least in part *because of* either [his disability] or his age." *Mathew v. N. Shore-Long

Island Jewish Health Sys., Inc.*, 582 F. App'x 70, 71 (2d Cir. 2014) (internal citation and

quotation marks omitted); *see also White v. Andy Frain Servs., Inc.*, 629 F. App'x 131, 133 (2d

Cir. 2015) ("[T]hough we must construe NYCHRL claims more liberally than federal and state

law claims, NYCHRL similarly only prohibits discrimination in the 'terms, conditions or

privileges of employment' when such discrimination is 'because of' a protected characteristic."

(quoting N.Y.C. Admin. Code § 8-107(1)(a) and citing *Mihalik*, 715 F.3d at 109)).

### A. NYCHRL religion and national origin discrimination

Notwithstanding the more liberal construction for establishing NYCHRL claims, for the

reasons discussed above, Plaintiff has not established a prima facie case of national origin or

religious discrimination.

### B. NYCHRL age discrimination

For purposes of Defendants' motion, the Court assumes that Plaintiff has carried her

burden of showing prima facie age discrimination. *See Sattar v. Johnson*, 129 F. Supp. 3d 123,

138 (S.D.N.Y. 2015) (finding that "Second Circuit case law makes clear that the court may

simply assume that the plaintiff has established a prima facie case and skip to the final step in

the *McDonnell Douglas* analysis, as long as the employer has articulated a legitimate

nondiscriminatory reason for the adverse employment action" (citing cases)), *aff'd sub nom. Sattar v. United States Dep't of Homeland Sec.*, 669 F. App'x 1 (2d Cir. 2016). However, Defendants have presented a legitimate, non-discriminatory reasons for hiring Lak's — his relevant experience conducting roof inspections and his experience working for a City agency — and Plaintiff has failed to show that this reason is pretext. Saakian's question as to how Plaintiff would feel about working with younger supervisors is insufficient to establish pretext, s*ee Henry*, 616 F.3d at 149, especially considering that Lak is also over fifty years old.

## III. Conclusion

For the foregoing reasons, the Court adopts Judge Mann's R&R in its entirety pursuant to 28 U.S.C. § 636(b)(1). The Court grants Defendants' motion for summary judgment and dismisses the Amended Complaint in its entirety. The Court directs the parties to file a copy of the 2009 payroll spreadsheet electronically and under seal within five days of this Memorandum and Order. The Clerk of Court is directed to close this case.


SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge



Dated: March 31, 2018
        Brooklyn, New York